162403 United States v. Kathy Chin 162404 United States v. Michelle Thomas May it please the Court, Daniel Tenney for the United States. If I might, I'd like to reserve three minutes for rebuttal, please. You may. Thank you, Your Honor. The District Court dismissed counts of an indictment in this case after making factual determinations that were inappropriate at this stage of the case. The proper time to resolve factual disputes between the parties would have been after a trial on the merits. If you look at the indictment itself, it satisfies the standard set out by this Court that it identifies the elements of the crime charged and the general factual scenario on which the charges are based. Paragraph 119 of the indictment in particular lays out the elements of the charge and then gives a chart which has the details of each drug shipment that is charged. It has where the drugs were sent to, what kind of drugs they were, the date on which the drugs were sent, and the names that were placed on the invalid prescriptions, which included names like Wonder Woman and Tony Tiger, that the District Court recognized were clearly not legitimate prescriptions. And that is all that it takes to proceed past the indictment phase. The grand jury returned an indictment in this case, and so the case should have been allowed to proceed to trial. The District Court's... So the indictment alleges that they worked in the packaging area checking orders. I mean, I think that's the particular language that the Court focused in on. That's correct, Your Honor. And the question is, is checking orders synonymous with criminally culpable dispensing? Right. I mean, that's the way the District Court phrased the inquiry, and there's sort of a few answers to that. In the context of the indictment, of course, what a pharmacist does is check, is fundamentally checking orders when there's a prescription that comes in, and these are the allegations of this case. It's quite clear there were prescriptions. And in order for a drug to be shipped out, based on that prescription, a pharmacist has to check the order. That's the function of a pharmacist. And so that's what was meant, of course, by that language in the indictment. Now, if there were factual uncertainty about whether that's really what these people did, or if they have an alternative explanation, of course they could present that at trial. But in current posture, the government certainly did allege the District Court said that they were putting address labels on packages, that these were clerical jobs. Those sorts of statements by the District Court don't have any basis in the indictment itself. The indictment specified that these people were employed as pharmacists, and so what the indictment alleges is that they were doing the job that a pharmacist does, and that job includes checking prescriptions. And so checking orders is just a way to articulate that. Could a non-pharmaceutical employee have done this job under mass law? I mean, because the job was being done in a way that doesn't comply with the law, it's a little hard to answer that question. I mean, we think that if the job were checking legitimate prescriptions under Massachusetts law, which is not the law that governs here, but to answer your question, under Massachusetts law, you need a pharmacist to do that. Now, there are cases in which people hire non-pharmacists to dispense prescription drugs, and they can get prosecuted under federal law for that. But in this case, what NECC did was to hire pharmacists and to say that those pharmacists signed off on something. And this, what I'm about to say is not in the indictment, but just to give you the factual background, it is in the record, but not the indictment. They had something called the Pharmacist Prescription Order Verification Sheet, and the pharmacist would initial that, and that would be the method of approving the drugs for shipment. Why do we care about that if it's not in the indictment? You don't need to, Your Honor. Could you help me hear some understanding of how this all works together? We have Rule 7C1 that sets forth the standards for an indictment. And then we have the handling test for assessing compliance with Rule 7. But then we have Rule 12, where you could have a motion to dismiss an indictment for failing to state an offense. How does that all mesh together? Is the Rule 7 test as construed in the handling different than the Rule 12 test that would be applied in moving to dismiss an indictment for failure to state an offense? I'm not sure if the test would deviate. The point, in this case, we think that an offense was stated and that we satisfied the relevant criteria. An issue regarding the interaction of those rules hasn't been raised here, so I'm not sure I have a direct answer to your question. But in terms of the standards that are set out for stating an offense, in this case, we've identified the elements and the factual scenario with actually much more specificity than is required. And so we would submit that this case should proceed to the next stage. So your basic position is if you literally just take the language of the statute and said, John Doe, on September 15, 2017, did, and then quote the language of the statute, that would be enough to state an offense under Rule 7 and give him enough notice to know by what day it is, or say, or at the place, for example? I mean, it depends on the context. But I mean, in the Supreme Court's decision in Resendee's poems, which we cited in our reply brief, there the indictment said that somebody attempted to enter the United States unlawfully without permission from the federal officials, identified the approximate location and the date, and the Supreme Court held that that was sufficient. Now, in your hypothetical, depending what the offense is, of course, if somebody did a lot of things on that day and it's unclear which one it is, then you could, you know, I don't want to say generally that that's always enough. But in this case, it was far more specific than that because we have specific drug orders, specific dates, specific names. And so it's quite clear both that we've identified for notice purposes what the conduct is and that that is conduct that would rise to the level of a criminal offense. Unless there are further questions, I'll wait for a rebuttal. Thank you. Thank you. Good morning, Your Honors. John Henry Cooner on behalf of the appellees. In this case, in counts 95 to 109, the government restates and realleges paragraphs 1 to 3, 10, and 13 to 14. That's the context before the court. The particular, in particular, it's in paragraph 10 and in paragraphs 13 to 14, it states, as Judge Thompson, you remarked, that they were checking orders in the packing area. The government concedes that that's the notice that was provided to the appellees in this case. And I suggest that that does not constitute dispensing. That the district court properly considered, what does dispensing mean? Which is that it fills a prescription. The question, Judge Kayeda, that you just asked the government about whether a non-pharmacist could do that, I think the answer is clearly yes, in Massachusetts. And it failed, therefore, to conform to Rule 7c1, that is, it did not provide a plain, concise, indefinite written statement of the essential facts constituting the offense charged. In the test, we just have to ask first whether the elements of the offense have been charged. And it seems to me, by quoting the statute in its entirety, they have charged your client with all of the elements of the offense. Now, we know that's not enough. You've also got to give enough notice so you know where, when. And they say you did these things precisely when you checked these 15 prescriptions. How does that not give you enough notice to then know what it is you're charged with? Because under the statute, you still have to look at what the statute charges. And what the statute charges is dispensing. If, per se, checking an order in a packing area is not dispensing, then it hasn't charged a crime and hasn't put you on notice about what you did. Well, we don't know. That's what you'll try. I mean, suppose they charge you under the armed bank robbery statute, and it said on September 17, 2017, you walked into the Main Street Bank, 100 Main Street, and did commit armed robbery. Well, I suggest, Judge, in that situation, perhaps it would be. So here they're saying on such and such a date, you, with these 15 specific prescriptions, you did dispense unlawfully under this statute. It seems to me that's the same. You would then say, in an armed robbery case, well, I didn't have a gun, so I'm actually defending. I just walked into the bank and walked out. And in this case, you're going to say checking isn't dispensing. And if you're correct, you win. Well, I suggest, Judge, it still does not provide constitutional notice to Ms. Stefanitz, Thomas, and Chen about what it is that they, not only in the indictment, but on the day in question, was there fair notice that what they did would constitute a crime just by checking, basically, shipping orders. And that is not. Help me think about it this way. Suppose you didn't want to dismiss the indictment, and it just stayed there. And then the government totally blew the speech trial act. They forgot about this case, and you got it dismissed with prejudice. My understanding is that it's dismissed without prejudice. Well, sometimes you can dismiss with prejudice. Let's assume it was a flagrant intentional violation of some type, and the case gets dismissed with prejudice. I'm having trouble seeing how the government could prosecute any of your clients again under the Double Jeopardy Clause for any of those 15 prescriptions alleging they were dispensing a violation of the statute. And if that's the case, isn't that the handling test is precisely whether it puts you in a position to invoke the Double Jeopardy Clause to a subsequent prosecution? Well, if there's a subsequent prosecution, I'd be making that argument, Judge. However, in this situation, I suggest that it's certainly conceivable that the government could reindict and say that they were filling prescriptions on that date with respect to these prescriptions. And then they would be saying something different, and there would be a question about whether or not it was Double Jeopardy. They did not allege that they were filling prescriptions. And that's a distinction that is crucial in this situation. Well, the elements includes the term dispense. Right, which the district court, I think, properly construed as meaning filling the prescription. Their action is afterwards. But the court resorted to Stedman's Medical Dictionary for a definition, and then seemingly it only looked at one of two optional definitions. Correct, Judge. And as we pointed out in our brief, first of all, looking to a dictionary, and particularly one that's of a specific, a discreet medical dictionary is an accepted manner of statutory interpretation. What the court said, and I think properly so, is that in this context, the first definition is extremely broad. As we pointed out in our brief, it would apply to something like giving food to somebody. And in terms of providing, you know, narrowly construing a statute, that would not, which I think we cite for the proposition, you have to narrowly construe the statute. Why are we looking at dictionaries here? Didn't the indictment, I had thought the indictment actually inherited Congress's chosen words. They did. But what does it mean, and what notice does that provide? Well, that's what you have a trial over, whether the checking that they did satisfies what Congress meant. And then maybe you look at it, and then maybe you put in, you know, some sort of motion to argue that the statute should be narrowly, Congress's words should be understood narrowly. And if so, maybe you ultimately win, depending on what your guys were doing or not. But why at this level of the indictment, when they're supposed to tell you the offense you're being charged with and the elements, if in describing the elements, they use the exact words Congress used, what's wrong with that? Because they said that it was done in a certain way. They charged it in a certain way. They said, they didn't just say, it may very well have been. If they had done that, I would suggest that a motion for a bill of particulars would have been appropriate, because it would say, how does that constitute the offense? And the government attempted, at least, to take care of that problem by saying they did it by checking orders in the packing area. So I understand that a bare bones statutory recitation may, in some circumstances, like an armed robbery, where the illegality is patent, just give the statutory terms. However, that's not the situation here. This is not an inherently illegal situation. This is medication that's being sent to medical facilities. There's a prescription that was written by a doctor, and it's being sent to medical facilities. So this is, and that's why I suggest that the analogy or the comparison that Judge Stearns made between dispensing and distributing bears some efficacy here. Simply because the government had to give some notice about what is it about this that puts you on notice that you were committing a crime at the time you did it, and that we're now saying that you did commit a crime. And that just was not apparent. So therefore, the government said, and that's why he charged it that way. So they're saying, as I read it, they're saying that when your client checked 60 vials of a particular drug for dispensing or for sending to Betty Ford, Jimmy Carter, and Bill Clinton, that your client was violating the statute. Why doesn't that put you smack on notice of what statute they're saying and what you did, and then you're going to show up at the trial and you're going to have them describe exactly what they did, whether they saw the names or not, and why that's not dispensing? Simply because at that stage of the proceedings, what they've charged, which is checking the packing order, checking in the packing division, basically shipping, it's not dispensing as a matter of law. That's why there's no notice. As a matter of law, there's no crime because what they're charged with, checking the packing order, does not come within the statutory definition. Apparently I'm getting the hook here. Yes. Good morning, Your Honor. I'm Joan Griffin, and also parking in here for the defendants. I was just going to briefly address what the government began with, which was an assertion that Judge Stearns made factual determinations inappropriate at this stage of the proceedings in reaching his order. The short answer to that is he didn't do that. And I commend you to Judge Stearns' two excellent decisions here, the more fulsome one dismissing the charges against my client, Ms. Chin, and Ms. Thomas, and then his succinct but excellent decision denying the government's motion to reconsider. And in there, Judge addressed the issue that Judge Thompson has raised is, does checking orders equal dispense? And Judge Stearns clearly confined himself to the relevant allegations of the indictment in determining that. On the contrary, it's the government that attests. But the indictment also lists the elements which charges dispensing. It lists the elements, Judge, but not a factual background which the factual background equals dispensing. And that's what the judge said. He said, simply alleging that someone works in the shipping department checking orders, and I would say in the context of this indictment, which is a very fulsome indictment that describes all of the operations of this place, it doesn't constitute dispensing. But why? I mean, if a trial, a witness is going to be asked, what does a licensed pharmacist checking orders, what does that entail? Great question. Because that is the second basis of the government's argument. Okay. If checking orders isn't dispense, well, checking orders plus the fact that you're a licensed pharmacist, that equals dispense. That is their case. But, Judge, that can't be the case. Because just because someone, let's say, who's returning from maternity leave after raising children and takes a part-time job in a corporation like NECC, and does a smaller job or a low-level job, even though they're a licensed pharmacist, they don't then become responsible for Barry Catton, the manager of record, the pharmacist in charge. That can't be the case. In that case, no professional, lawyer, doctor, pharmacist, could ever work in a corporate or large firm setting if merely because of our licensure, regardless of our job responsibilities, we would become responsible for the person in charge. I mean, that's turning the Perks Doctrine in the FDCA version of the law, which has responsible corporate officer responsibility, that's turning it on its head and saying the lowest-level employee in the company, because she happens to have a pharmacist license, is now responsible for wrongdoing by Barry Catton, the pharmacist in charge. That is simply not the law. And I agree with you. That's what they're trying to do here. How do you deal with Rule 7C1 that, as I understand it, says that it specifically says it's okay for the government to say in an indictment to charge an offense and to say the means by which the defendant accomplished the crime are presently unknown, period. So if you can say that, why isn't providing the additional factual allegations here in the complaint giving you more notice than you would usually get? Because by providing that additional factual information, the government has shown that as a matter of law, what these defendants are charged with having done does not constitute the crime of dispensing. But then you're not talking about the adequacy of, under Rule 7, of the indictment. You're simply saying that what your guys are alleged to have done is not a crime. I think that does go to the, I think that is analyzed at this stage as the adequacy of the indictment if the government goes farther and provides those allegations. We can't just close our eyes to the allegations of the indictment. It's a 73-page indictment. You know, it's all in there. And in addition to the specific limited facts against our defendants in the shipping department, by contrast, Count 3 goes through reams and reams of facts of how Barry Catton was orchestrating and scheming over these patient names. So how do I know as a matter of law that if a pharmacist is sitting there looking at a prescription made out to Mickey Mouse and then letting that go out in the mail and then taking the one to Donald Duck and sending that out and then the one to who knows who and spends the whole day sending those things, that pharmacist is not dispensing in violation of the statute? Is that what you're saying? That is correct, Judge. Because these pharmacists... In what case says that? Because, Judge, these pharmacists were employed checking orders in the shipping department. That's all. And according to the indictment, there were other pharmacists. Just as Judge Stern said, you know, there isn't some public policy... But you're at least aiding and abetting the... I mean, you're sitting there as a pharmacist. If you say no, that doesn't go out the door. If you say yes, I'm checking it, it goes out the door. The Donald Duck? Well, first of all... Please answer. So the answer to your question, Judge, is that yes, for the purposes of this order, Judge Stern's assumed that these defendants knew or saw that at least some of these fake names, not a fact we would concede at trial at all. But I agree. He's assumed that here. But it simply was not part of their job duties to verify or check prescriptions or patient names. And the mere fact that they were supposed to be checking these orders in the shipping department and may have noticed those names, it simply doesn't constitute filling a prescription or dispensing, which is the charge here. Suppose they noticed that it said Strychnine. Could they just send it out the door and that wouldn't be any problem? Well, as Judge Stern said in a footnote, these defendants may have, or under your hypothetical, have committed a different crime. But they haven't committed the crime that's alleged here. And they haven't been alleged to have committed a crime by the allegations against them. Thank you, Judge. Thank you. Your Honor, just one very quick point on rebuttal. It's clear from the call we hear that the dispute between the parties is about what these people actually did. The defendants have a very limited view of what their responsibilities were and what they did. And the government has a view that encompasses a greater range of conduct. Do you want to just say something about the aiding and abetting theory before you sit down? Sure. I mean, the aiding and abetting theory, you know, because I don't understand there to be a dispute about whether this crime actually was committed. The question is whether they had the requisite knowledge and whether they participated in it. And, you know, we think that they participated enough to be charged as principal. But even if you think that's wrong, the district court properly recognized that they did have the requisite knowledge of what was going on. And they were, the district court dismissed the aiding and abetting theory based on its conclusion that they were merely present at the scene of a crime. But even on plaintiff's, I'm sorry, even on the defendant's view of the facts here, they were employees, they were participating in sending out these drugs. It's not like they were just sort of, you know, off somewhere else in the facility having nothing to do with this. So they clearly participated in the scheme and they had the knowledge. So that theory too should be allowed to proceed. But just on the theory as principles, also we would submit that really what's going on here is that there's a factual dispute about what exactly these people did. The government did not allege that, you know, they had no role in these things and all the things that are being argued here. And that's something that can be resolved at trial. And we would submit that the case should be sent back for that purpose. Unless there are any further questions. Thank you, Mary. Thank you.